## J. P. DAVIES v. CORDELIA PRICE STEVENSON,
### No. 10812.

1. VALUE OF ACCEPTED DRAFTS — *prima facie, face value as against one converting to his own use*. One who converts to his own use written instruments, in terms payable to himself but in which another has an interest, is bound, in the absence of proof as to the value thereof, to account to such other for his share of the full sum shown to be due on the face of such instruments.

2. SET-OFF — *right of, maintained on particular facts*. The fact that the defendant gave verbal directions to a member of a firm which was indebted to him for his share in the profits on a tie contract, to apply such profits to the payment of a debt due from the defendant to such party and of a note due to the plaintiff's assignor, who was also a member of such firm, where nothing was ever done under such directions but the whole of such profits were included in securities afterwards transferred by the firm to secure its own indebtedness, does not in any manner affect the right of the defendant to set off his share of such profits against a claim prosecuted against him by an assignee of such note who purchased after maturity thereof, and after the right to such set-off had accrued.

Error from Reno District Court.   F. L. Martin, Judge.   Opinion filed October 8, 1898.   *Reversed.*

This action was brought by Cordelia Price Stevenson to recover judgment on a promissory note, executed by J. P. Davies and Rees R. Price to John R. Price, for two thousand dollars, payable in one year with eight per cent. interest.   The plaintiff claimed to own the note by a purchase made long after maturity of the paper.   The defendant set up an affirmative defense which sufficiently appears from the findings of the court given below.   A jury was waived and the case submitted to the court, which made findings of fact and conclusions of law, as follows:

"FINDINGS OF FACT.

"1.   That at San Diego, Cal., on January 27, 1888, J. P. Davies and R. R. Price made a note to John R.

Price for two thousand dollars, payable in gold coin, with interest at eight per cent. until paid, due in one year. That in October, 1891, the said note was placed as collateral by John R. Price in the Bank of Topeka, Kansas; and continued as collateral in the said bank on certain debts he owed there until July 19, 1895, when the said note was transferred by John R. Price, with the consent of the Bank of Topeka, to his daugher, Cordelia Price Stevenson. She made her note to the Bank of Topeka for twelve hundred dollars in the purchase of the note in question. That in February, 1892, five hundred dollars was received on said note paid by Reese R. Price to John R. Price and the said amount was indorsed on the note. J. P. Davies was principal on the note, and R. R. Price was surety.

"2. That suit was brought on this note July 26, 1895, by Cordelia Price Stevenson. That between the making and suing of said note the said J. P. Davies was not a resident of the State of Kansas, and was absent from Kansas most of the time.

"3. That in the spring of 1890 John R. Price and R. R. Price and W. J. McGavock, partners as Price, Mc-Gavock & Company, had contracts to build a railroad for the Monterey, Mexico & Gulf Company, in the Republic of Mexico, from the City of Monterey to some city beyond the City of Victoria, a distance of 416 miles. That their contracts were to grade the road-bed and supply the ties necessary for the said road. That the tie contract was separate from the grading contract. That in said spring, about the month of April, the said firm employed the defendant J. P. Davies to take charge of the tie contract they had with the road, and see to the purchase and delivery of the ties along the said line, and for such service they agreed to pay him the sum of $125 per month, together with his expenses in attending to his duties, and also to give him one-fifth of the net profits on the tie contract. That the said tie contract was completed in August, 1891. That the said J. P. Davies drew his salary and enough to cover his expenses, but did not draw any profits.

"4. That in 1891 the balance due from the Mexico, Monterey & Gulf Railroad Company amounted to

$66,000 to the firm of Price, McGavock & Company. This embraced the entire indebtedness of said railroad company to said firm in all forms, and the said railroad company was drawn on by the said firm in three drafts, each of $22,000, drawing ten per cent. interest, and the said drafts were duly accepted by the said railroad company, but not paid. That these acceptances were taken by the firm of Price, McGavock & Company, in September, 1891, and placed in the National Bank of Commerce as collateral security for $70,317.94 borrowed money by said firm represented by the notes of the said firm drawing eight per cent. interest. That these acceptances were duly assigned as collateral to said Bank, and afterwards suits were brought against the railroad company on these acceptances in the name of Price, McGavock & Company, and judgment was obtained against the railroad company for the amount of the acceptances with the interest, aggregating about $66,000, with interest. The said judgment was declared a first lien on 416 miles of railroad owned by the Company. If the amount due upon the tie contract had been promptly paid when the contract was closed up, I find that the profits upon such contract to the firm of Price, McGavock & Company would have been about $40,000 Mexican money. That this judgment was then assigned to the National Bank of Commerce, which held the acceptances sued upon, to secure it for the loan hereinbefore set out, and which never at any time knew of the arrangement with Davies. That the notes representing the loan were renewed from time to time until the first day of May, 1894, when the notes amounted to $78,878.54 principal and interest. This indebtedness was then renewed by a principal note of $70,317.94 and interest note of $8,560.60 signed by said firm and secured by said judgment aforesaid, and said notes are still unpaid. The judgment draws ten per cent. interest and the notes eight per cent. The evidence shows that no sale of the road has ever been made and the judgment has not been collected.

"5. Defendant sets up his interest in the profits of and in the tie contract against this note made to John R. Price as aforesaid. The court finds that no mar-

ket value of the judgment was established by the defendant in this cause : also, that about April 15, 1891, the defendant authorized R. R. Price, who was then a member of the firm of Price, McGavock & Company, to keep his share of the profits and pay what he owed the said R. R. Price and his father.   I find that this was done to apply on indebtedness on his part to R. R. Price in the sum of $3,000 and the note to John R. Price sued on in this suit ; and I further find that as the balance due the firm of Price, McGavock & Company has never been paid, there is no way of determining how much profits Davies is entitled to, and that such contingent profits cannot be set off against plaintiff's note.

"6. I find that the firm, Price, McGavock & Company, is insolvent and was before the beginning of this suit, also each member thereof.   That R. R. Price was dead and his estate insolvent, and that W. I. McGavock has left the country and gone to South America, where he is now.   That the books of Price, McGavock & Company are lost or destroyed, that the said firm never made any settlement with Davies or with each other.   One of the other parties is absent from the country, and the third member of the firm is also insolvent ; and I find further that Davies cannot recover anything from the said firm or its members on account of insolvency, and that the said acceptances and judgment are beyond the control of said firm and its members, and also beyond the reach of Davies."

CONCLUSIONS OF LAW.

"1. I conclude as a matter of law that Davies transferred his claim against Price, McGavock & Company, and the proceeds of the profits of the said tie contract, to R. R. Price to be used in payment of his indebtedness to R. R. Price and John R. Price, and that such contingent profits cannot be set off in this action.

"2. That by reason of said transfer and also by reason of the fact that he did not establish market value of judgment mentioned in the findings, Davies cannot set off anything against the note sued upon.

"3. Plaintiff should recover the sum of $2978.83."

Thereupon judgment was rendered in favor of plaintiff for the amount found due.

*H. Whiteside*, for plaintiff in error.

*W. M. Whitelaw*, for defendant in error.

ALLEN, J. Do the findings of fact warrant the conclusions of law and judgment entered thereon? Suit on the note was not barred by the Statute of Limitations, because the defendant was absent from the State most of the time after the execution of the note. The case is not complicated by any question as to the rights of an innocent purchaser of commercial paper. The note was held by the payee, not only till long after maturity but until after all the transactions on which the defendant claims a right of set-off had been completed. It appears from the findings that Price, McGavock and Company made a profit of $40,000 on the tie contract they had with the Mexico, Monterey & Gulf Railroad Company ; and that Davies was entitled to one-fifth of these profits. There was a general balance due from the Railroad Company to Price, McGavock and Company of $66,-000.' It does not appear that any separation of the payments on the grading contract and on the tie contract was made by the parties. The trial court seeems to have assumed that all of the profits on the tie contract were included in this $66,000, and still remained uncollected. We shall assume this to be the fact, yet it does not warrant the conclusion of the court. Price, McGavock and Company drew on the railroad company for the whole amount due them and obtained the company's acceptance of their drafts. They thereupon converted the drafts to their own use by transferring them to the National Bank of Commerce of Kansas City, as collateral for their indebtedness to

1. Prima facie value of accepted drafts is face value, when.

it. They afterwards obtained judgment on the drafts for the amount of them, and this judgment was assigned to the bank. It is expressly found that the bank had no notice of any rights of Davies in the fund. Whether he could successfully assert his rights as against the bank under the circumstances we need not decide, but he clearly is not bound to do so. In this state of the case it was quite unnecessary for the defendant to prove any market value of the judgment, but he had a right to treat the profits as having been realized by Price, McGavock and Company. In the absence of any proof on the subject the presumption is that the drafts were worth their face value. When they converted the acceptances to their own use they were chargeable with his share of the profits.

Nor is there any force in the contention that a mere verbal direction given by Davies to R. R. Price, who

2. Right of setoff maintained.

was also a member of the firm of Price, McGavock and Company, and who it is said was the treasurer and financial manager of the company, to apply this fund to the payment of a debt of $3000 owing by Davies to him, and this note, operated to place the fund beyond the reach of Price, McGavock and Company, and of Davies. If R. R. Price had actually done what he was directed to do the note would have been paid. There is no proof nor claim that he made any misappropriation of the money or took it out of the assets of the firm at any time, or for any purpose. The findings of the court are all on the theory that the whole of the profits on the tie contract are locked up in the judgment held by the bank against the railroad company. If so, the firm of Price, McGavock and Company has had the full benefit of them, and each member of the firm is personally liable to account to the defendant for his share. Making allowance for the discounts to which Mexican money was then

subject the profits due the defendant far exceed the amount of the note sued on. The defendant had the right to set off this claim for his share in the profits of the tie contract against the claim of John R. Price on the note sued on. His daughter, Cordelia Price Stevenson, having purchased the note long after maturity and long after the right to assert the set-off had accrued, stands in the shoes of her father, and the note in her hands is subject to all defenses which might have been made against him. On the findings of fact made by the trial court the defendant was entitled to judgment.

The judgment of the District Court is reversed, and the cause remanded with directions to render judgment in favor of the defendant for costs.