STATE BANK OF SLAYTON, a Corporation, Plaintiff and Respondent, v. MARION EDWARDS and Arthur Johnson, Defendants, ARTHUR JOHNSON, Appellant.

(177 N. W. 677.)

**Bills and notes — guaranty — signer of note primarily liable — holder of note may not return payment or cancel security and thereafter collect from guarantor.**

When, without any consideration, a person signs his name on the face of a promissory note, he becomes a guarantor of payment and is primarily liable for the debt; but when the debt is paid or secured, in whole or in part, the holder of the note may not return the payment or cancel the security and still collect from the guarantor the whole debt. The payment may not be canceled or the security released, thrown away, or impaired; the security must be held as a trust for the benefit of the guarantor; otherwise, the debt is paid to the extent and value of the security released or made unavailable.

Opinion filed March 19, 1920. Rehearing denied April 29, 1920.

Appeal from the District Court of Rolette County, Honorable *C. W. Buttz,* Judge.

Reversed.

*Verrit & Stormon,* for appellant.

*Fred E. Harris* and *John J. Kehoe,* for respondent.

Having signed the note upon the face, the accommodation maker was a person primarily liable thereon, and the acts of the plaintiff did not release him from his obligation to pay the note. First Nat. Bank v. Meyer, 30 N. D. 388, 152 N. W. 657; Vanderfort v. Farmers & M. Nat. Bank (Md.) 10 L.R.A.(N.S.) 129; Cellers v. Mechem (Or.) 89 Pac. 426; Wolstenhelme v. Smith (Utah) 97 Pac. 329; Anderson v Mitchell (Wash.) 98 Pac. 751; Bradley Engineering & Mfg. Co.

v. Heyburn, 106 Pac. 170; Richards v. Market Exch. Bank (Ohio) 26 L.R.A.(N.S.) 99.

The plea of payment tenders an affirmative issue, and the burden of proof must be assumed by the party interposing the plea. Gravert v. Goothard (Neb.) 115 N. W. 559; Bossi's Estate v. Baehr (Wis.) 113 N. W. 433; Delana v. Voss (Iowa) 114 N. W. 1076; Youtsey v. Lemley (Iowa) 151 N. W. 491; Tedrow v. Johnson (Iowa) 149 N. W. 645.

Robinson, J. On June 30, 1914, defendants made to plaintiff a promissory note for $1,800, due October 1, 1914, with interest at 8 per cent. Payments were made thus:

December 30, 1915 ................................. $216.00

January 18, 1916, Principal, ........................ $284.00

November 4, 1916, Paid on interest, .................. $121.28

August 8, 1917, Credit, ............................. $247.40

On June 23, 1919, the jury found a verdict against Johnson for $1,516 and interest at 8 per cent from December 30, 1916, less the credit of $247 on August 8, 1917. Judgment was entered against Johnson for $1,535.29, and he appeals.

The defense of Johnson is that, though he signed on the face of the note, he received no consideration, and he signed only as guarantor or surety; also, that plaintiff has received and accepted payment or ample security for the balance due on the note. It appears that to secure the note and several prior notes, amounting to a large sum, Marion Edwards, the principal maker of the note, conveyed to the bank 441.61 acres of land. And, excepting 80 acres in Pierce county, the land was all sold and applied on the notes in full payment, and a balance of $247.40 was left to apply on the note in question. In April, 1917, the 80-acre tract was sold to Frank Rumley and he made to Marion Edwards a purchase-money note and mortgage for $1,600, and interest. Then Edwards delivered to plaintiff the Rumley promissory note and mortgage, with an assignment of the mortgage, and the bank conveyed to Rumley a good title to the 80 acres, which it had held in trust to secure the note in question. The debt to Rumley, the mortgage, and the assignment of the same, were duly recorded. Then,

as it appears, the coupon notes were only 5 per cent, or $80 a year, while the principal note was for 6 per cent. Edwards asked for a return of the note and coupons, to have the same corrected so as to read 6 per cent in lieu of 5 per cent. The plaintiff bank returned the note and the coupons to Edwards, and no one seems to know what became of them. Rumley refused to pay the mortgage debt without his notes or an idemnity bond. Hence this suit was commenced.

Evidenly the Rumley note and mortgage were given to apply on the note in suit, either as an absolute payment or as collateral and in lieu of the lien on the 80-acre tract. The case does not present any question concerning the primary or secondary liability of Johnson. Consequently he was a guarantor of payment, and any payment of the debt or security given for the same at once inured to his benefit. The plaintiff was not at liberty to return a payment or a good and valid security and still hold the guarantor as if no payment had been made or security given. Scandinavian American Bank v. Westby, 41 N. D. 276, 172 N. W. 666. Then we have the maxim: "When one of two innocent parties must suffer by the act of a third, he by whose negligence it happened must be the sufferer." Comp. Laws, § 7278. If the plaintiff must suffer any detriment from the loss of the $1,600 note, it should be charged to its own negligence. There is some evidence that plaintiff received the Rumley $1,600 note and mortgage as payment of the debt, the same as it had received from Edwards other securities in payment of other debts. The sum due the plaintiff was less than $1,500, and it was the wind-up of a long protracted deal. If the plaintiff did not receive the Rumley note and mortgage as payment, then it was ample security for the debt, and it was given as the close of an old and long-standing deal,—as the final determination of all dealings between the plaintiff and Marion Edwards. If the bank received the note in payment, then it was making about $100 or more in excess of the interest,—and that was about the way it was doing business. There is no showing that the $1,600 note or its coupons have been presented for payment. The chances are that it has been lost or mislaid, and that the remedy of the plaintiff is to recover on it as on a lost note. Had the plaintiff retained the Rumley note, and had it offered to transfer and deliver the same and the mortgage to Johnson, then it would have been in a position to maintain this action. Then there

could be no defense only that the note and mortgage had been received in absolute payment.

Manifestly the court erred by striking from the answer all that was alleged concerning the Rumley note and mortgage, either as payment or as security, and by directing the jury to disregard all evidence concerning the same.

Judgment reversed.

Bronson, J. I concur in result.

Grace, J. (specially concurring). I specially concur in the opinion of the court, as written by Mr. Justice Robinson, upon the ground that the debt upon which suit was brought was, by the original debtor (Edwards), secured by a mortgage on a certain 80-acre tract of land, which mortgage was given to secure the $1,600 note; the note and the recorded mortgage were delivered to the plaintiff as collateral security.

It was the duty of the plaintiff, upon receipt thereof, to preserve such collateral, and to use ordinary care and vigilance in doing so. He could not dispose of it, nor convert it to his own use, nor permit it to be dissipated or wasted by his negligence, without being accountable to Johnson.

This principle is fully discussed in the opinion of the court, and in the case of Scandinavian American Bank v. Westby, 41 N. D. 276, 172 N. W. 666, cited in the opinion of the court.

Birdzell, J. (concurring specially). I concur in the reversal. It appears that, upon motion of the plaintiff's attorney, the court, at the beginning of the trial, struck out the answer in so far as it related to allegations of suretyship, and the judge specifically stated he was of the opinion that the defendant was primarily liable upon the instrument and could only be relieved by any act of the holder that would relieve one primarily liable. It clearly appears that the trial court was of the opinion that the holder of the note could entirely disregard the relation of suretyship alleged by the defendant, and could relinquish and dissipate securities held without affecting its rights against the defendant. From the facts which later appeared during the trial, I am of the opinion that this ruling prevented the defendant from hav-

ing a fair trial. Strictly speaking, the defendant Johnson, in his answer, did not counterclaim for damages based upon the dissipation of securities; but he did set up the dissipation as a matter of defense. It appears that the defendant was more or less in the dark as to the actual handling of securities by the plaintiff, and would necessarily remain so until the testimony of Dinehart would be secured. Under the court's ruling, it would have been useless for the defendant to have attempted to amend his answer to conform to the proof, in support of a counterclaim for damages such as is amply warranted by the testimony of Dinehart. It clearly appears that the bank held, as security for Edwards's indebtedness to it, title to the lands sold to Rumley, and that it so dealt with the title as to allow the record title to appear in the name of Rumley, without getting into its own possession Rumley's note, which, in reality, represents the equity of Edwards. On this record, prima facie, the damage occasioned to Johnson by the failure of the bank to realize on this security amounts to more than is due the plaintiff on the notes in suit.

CHRISTIANSON, Ch. J. (dissenting). The majority opinion is based upon the premise that the plaintiff received from the defendant Edwards, "either as an absolute payment or as collateral," a $1,600 note, secured by mortgage on an 80-acre tract of land in Pierce county in this state. A careful reading of the evidence leads me to the conclusion that the premise does not, in fact, exist.

The note involved in this suit bears date June 30, 1914. The defendant Johnson does not contend that he understood that the note was accompanied by any collateral, or that the bank should later receive any collateral.

The $1,600 Rumley note and mortgage bear date April 21, 1917. The evidence shows that the defendant Edwards took these papers and a $4,000 mortgage on other lands, and submitted them in person to Dinehart, the president of the plaintiff bank, on May 28, 1917. In looking them over he (Dinehart) discovered that there was a discrepancy between the principal $1,600 note, and the interest coupons attached thereto. Dinehart, in his testimony, gives the following version of the transaction: "Edwards turned over the mortgage on that (80 acres in Pierce county) for $1,600 on the 28th of May. I looked

over the note, the coupons attached, and the mortgage read 5 per cent and the coupons called for $80 each, and, says I, 'You made a mistake here,' and he looked it over and says: 'I am going down to Illinois, and I will have that note and coupons corrected;' and he took the note, and I have never seen it since." The mortgage securing the $1,600 note, the assignment of the mortgage, and the abstract of title, were left with Dinehart. Dinehart says that at that time he agreed with Edwards that the bank would take the two mortgages, if it found that the mortgagor "was good." It is undisputed that the $1,600 note has never been returned, although the plaintiff bank has repeatedly written Edwards in regard thereto. The only evidence relating to the $1,600 note and mortgage is the testimony of Dinehart. And if there is any basis for the holding of the majority it must be found in his testimony.

In this connection it may be mentioned that the defendant Edwards testified by deposition. And it is significant that he claims no credit for the $1,600 note. He does, however, claim that the note involved in this suit has been, or should have been, paid, by the proceeds of some other notes.

I quote from his testimony:

Q. On or about the 15th day of July, 1917, did you have any conversation with Mr. C. E. Dinehart with reference to this note in controversy?

A. Yes. . . .

Q. State what that conversation was, to the best of your recollection.

A. To the best of my recollection it was that I wanted him to take some other notes that I had secured by mortgage and signed by Chas. and Wm. Anderson, amounting to about $7,000 to be applied partly to pay the balance of the two Johnson notes, balance to be paid to the First National Bank of Rolette, North Dakota, to pay off certain notes to which they held the Anderson notes as collateral security. Mr. Dinehart, at that time, said he would look up the Anderson notes, and if they were satisfactory they would take them and apply the proceeds in that way.

Q. At the time you had the above conversation with Mr. Dinehart there was only a balance due on those two Johnson notes, and did I

understand from your testimony that these Anderson notes were, if accepted by Mr. Dinehart, to pay those two Johnson notes in full?

A. Yes.

Q. Are you indebted in any sum whatever to Mr. Dinehart or the State Bank of Slayton, the plaintiff herein, or either of them on account of the two Johnson notes in controversy?

A. I am not.

Q. Have you paid those two notes in full?

A. I have, not in currency, but by the Anderson notes, and in accordance with the agreement with Mr. Dinehart, which I have testified about before.

Dinehart denied the arrangement testified to by Edwards, and claimed that the plaintiff had applied the proceeds of the Anderson notes in accordance with the understanding which he and Edwards had relative thereto. The trial court submitted to the jury the question whether the proceeds of the Anderson notes should have been applied as claimed by Edwards, and the jury found in favor of the plaintiff upon this question.

Hence, the statement in the principal majority opinion, that "evidently the Rumley note and mortgage were given to apply on the note in suit, either as absolute payment or as collateral," is contrary to the testimony of both Dinehart and Edwards.

The majority opinion makes reference to the transfer by Edwards to the bank of 441.60 acres of land. The evidence shows that Edwards had sold this land to a man named Linson. Later Linson turned the land back to Edwards. There were first mortgages against the land, aggregating large amounts. Apparently Edwards was in no position to take care of the payments, so he turned over to the plaintiff bank a second mortgage upon, and a deed for, the land, with the understanding that the bank would pay the interest and taxes, etc., until the land could be sold. The undisputed evidence shows that the bank paid over $8,800 to take up the first mortgages, interest payments, and taxes. This transaction originated subsequent to the execution of the note in suit, and so far as the record shows had no connection whatever therewith. There is not a scintilla of evidence tending to show that the land was to be held as collateral to the note in suit. The evidence shows that Edwards sold all of the land so transferred to the plaintiff; and

that the plaintiff, in accordance with Edwards's directions, executed deeds to the various purchasers, and gave full and proper credit for all proceeds of such sales.

Manifestly, Scandinavian American Bank v. Westby, 41 N. D. 276, 172 N. W. 666, does not sustain the holding that the plaintiff bank is liable for the $1,600 Rumley note, either as purchaser or as the holder of collateral. In the case cited, Westby signed a note for one Stafne, "with the absolute understanding that the $2,000 stock in the Citizens' State Bank of Alexander would continue to be held by the plaintiff as collateral security, as well as with the assurances by Mr. Hagan [the president of the payee bank] that such stock furnished ample security for the payment of the indebtedness." 172 N. W. 674. Thereafter the Scandinavian American Bank, in violation of its agreement with Westby, delivered the bank stock to a party, who converted it. When the bank sued Westby upon the note, he counterclaimed for the damages which he claimed to have sustained by reason of the bank's breach of contract. In this case no such condition exists. The defendant Johnson has interposed no counterclaim. His answer makes no specific reference to the Rumley note,—although there is an averment, upon information and belief, "that the said plaintiff has collected many promissory notes given as collateral to the promissory note described in the complaint, the proceeds of which have not been properly applied by said plaintiff, and for which no credit has been given these defendants, and that if proper credits had been applied on the herein-described note it would be discharged and paid in full." The note involved in this suit was made almost three years before the Rumley note and mortgage came into existence. The Rumley note was never, in fact, delivered to the plaintiff bank. During the negotiations between the president of the bank and Edwards regarding the purchase of this note, the defect or irregularity was discovered, and the note was turned over to Edwards. It had not become the property of the bank. Nor had it been delivered as collateral to the note in suit. It is undisputed that Edwards has never returned the note to the bank. So far as anyone knows he may have negotiated it elsewhere. The evidence shows that, after the bank satisfied itself that the $1,600 note was good, it has stood ready to purchase and pay for the same, and would have done so at any time the note had been turned over to it.

Clearly the plaintiff bank should not be held liable as a purchaser and required to pay for the Rumley note. Nor should it be held liable on the theory that the note was held as collateral security to the note in suit, and that the plaintiff bank has violated some obligation which it owned to the defendant as regards such security. I believe that the trial court was entirely correct in instructing the jury that, in determining the case, they must not take into consideration, or base their verdict upon, the $1,600 Rumley note.