296 P.2d 712

## UNIVERSAL C.I.T. CREDIT CORPORATION, Plaintiff-Appellant,

### v.

## J. M. WHITWORTH, d/b/a People's Auto Service, Defendant-Respondent.

No. 8332.

Supreme Court of Idaho.

April 27, 1956.

and BAKER, District Judge,

Caldwell & Whittier, Pocatello, for appellant.

Jno. W. Clark, Malad, Jones, Pomeroy & Jones, Pocatello, for respondent.

530

on the reverse side of the contract) reading as follows:

"In consideration of the execution of the instrument on the reverse side hereof, *we* jointly and severally *guarantee* to any holder *the payment* promptly when due of every installment thereunder and the payment on demand of the entire unpaid balance *if Customer defaults in payment of any installment at its due date* or in any other manner, without first requiring holder to proceed against Customer. We waive notice of acceptance hereof and defaults thereunder and consent that holder may, without affecting our liability, release any rights against and grant extensions of time of payment to Customer and other obligors." (Emphasis supplied.)

SMITH, Justice.

February 7, 1953, at Malad, Idaho, respondent and one Rasmussen, a customer, entered into a written conditional sales contract; thereby Rasmussen agreed to purchase from respondent a 1952 Studebaker automobile for the purchase price of $3,079.34, payable $422.50 as the down payment, leaving a time balance of $2,656.-80 payable "in 6 successive monthly installments, each in the amount of $60 and one final installment of $2,296.80, all payable the same day of each month." Respondent assigned the contract to appellant and respondent executed a guaranty (appearing

September 3, 1953, at Malad, appellant, without the knowledge or consent of the purchaser Rasmussen, and without the knowledge or consent of respondent, took possession of the automobile and placed it in respondent's garage. Appellant thereupon advised respondent that Rasmussen was in default in his payment of $60 each for the months of July and August, totaling $120, which sum respondent then and there paid to appellant and which cured the July and August defaults. Appellant accepted the money so paid for the purpose of curing the defaults, the testimony of respondent Whitworth being as follows:

"A. * * * I asked Mr. Russell [collection manager of Universal C.I.T. Credit Corporation] if I would bring that contract to date as Earl [Rasmussen] had explained to him that he would have to go to see his father in order to make the payments so I asked him if I made the—brought the contract to date if it would be all right.—

"Q. What did he say? A. He agreed that it would and I gave him a check for the $120.00 which brought the contract to date."

It then appears that appellant's agent and Rasmussen had a heated argument, out of respondent's hearing. Then at said time and place Rasmussen advised appellant and respondent that he would pay the unpaid balance on the contract as and when the same became due, and demanded possession of the automobile to use it in going to Downey, Idaho, for the purpose of obtaining from his father sufficient funds to pay the balance of the purchase price on the due date, September 7, 1953. Respondent was willing that the automobile be turned back to Rasmussen but appellant refused to do so; appellant thereupon instructed respondent in writing, dated September 3, 1953, to hold the automobile "for the balance of the note", setting forth the balance; also further advised respondent in writing: "Please do not release this unit [Studebaker automobile] until the above amount has been paid either in cash or certified funds." At said time, September 3, 1953, after respondent had made payments under the contract for July and August, totaling $120, no payment was then due and none became due thereunder until September 7, 1953. It was then, by reason of appellant's acts in continuing in possession of the automobile and exercising all rights of ownership thereof to the exclusion of any rights therein of the customer Rasmussen and respondent, after respondent had cured the customer's default under the contract, that Rasmussen, September 3, 1953, abandoned the contract and then and there so notified appellant.

The Studebaker automobile remained in respondent's garage in Malad subject to appellant's aforesaid written directions, at all times commencing September 3, 1953, until November 24, 1953, except for a period of about two weeks during the forepart of November, when appellant stored the automobile in another garage at Malad and then returned it to respondent's garage. After the automobile had been returned to respondent's garage and while stored there pursuant to appellant's instructions, respondent received an offer of $1,695 for the car, which offer respondent communicated to appellant. Appellant refused the offer, giving its reason therefor that appellant "could get more money than $1695 at Salt Lake;" thereupon, at appellant's request and in reliance upon appellant's representation that it would sell the car for more than $1,695, and credit the amount realized on the unpaid balance of

the note, respondent on or about November 24, 1953, took the automobile to Salt Lake City, Utah, at his own expense, and delivered it to appellant.

Appellant sold the car at Salt Lake City, on or about December 15, 1953, for the sum of $1,000, against which it charged certain expenses, netting $985.15 as proceeds of the sale, which sum appellant credited upon the contract leaving, as appellant contends, an unpaid balance of $1,311.65 on the contract.

A representative of appellant testified that on December 15, 1953, the reasonable value of the automobile for "purposes of consumption" would be about $1,300; that the "blue book" retail value at that time, disregarding certain extra equipment on the automobile was $1,560; that in September, 1953, the retail "blue book" value, disregarding such extra equipment, was $1,795.

Mr. Whitworth of respondent showed an experience of 14 years in and about Malad in the automobile business, and in selling and dealing with automobiles. He testified that the automobile with its extra equipment was worth, in the vicinity of Malad, the unpaid balance of the purchase price, i. e., $2,296.80.

Appellant instituted the present action to recover the alleged balance of $1,311.65 owing on the conditional sales contract, together with certain costs and attorneys fees. It set forth in its complaint the conditional sales contract between respondent and the customer Rasmussen, the assignment thereof by respondent to appellant, and the guaranty executed by respondent.

Respondent admitted the execution of the contract, the assignment and the guaranty, but denied that any amount was due appellant under the contract. Respondent thereupon alleged as an affirmative defense the facts and circumstances substantially as hereinbefore set out and alleged by reason thereof, that appellant had converted to its own use said automobile which was reasonably worth $2,296.80, equal to the unpaid balance of the contract.

A jury returned a verdict for respondent upon which the trial court entered judgment. Appellant thereupon perfected appeal from such judgment.

Appellant has assigned three errors as committed by the trial court, which will hereinafter be disposed of.

Appellant, by its first assignment, asserts that the trial court erred "in not sustaining the demurrer of the plaintiff [appellant] to defendant's [respondent's] cross-complaint and in not granting the motion to strike said cross-complaint."

Respondent's pleading in its caption is designated "Answer and Cross Complaint." The body of the instrument initially denies the allegations of appellant's complaint; then follows respondent's "further and separate defense" to said com-

plaint and therein is set forth respondent's affirmative defense thereto. Appellant was not and could not have been misled, simply because the answer introduced "a further and separate defense to the complaint" followed by such affirmative defense. The character of a pleading is to be determined from the nature and substance of the facts therein alleged and not from what the pleader may have called it. Swank v. Sweetwater Irrigation & Power Co., 15 Idaho 353, 98 P. 287; First Savings Bank of Pocatello v. Sherman, 33 Idaho 343, 195 P. 630; Consumers Company v. Public Utilities Com., 40 Idaho 772, 236 P. 732.

■ Appellant by its second assignment asserts that the trial court erred in allowing respondent to testify to the offer at Malad, during the latter part of November, 1953, of $1,695 for the automobile. Appellant in the main objected to such testimony on grounds as bearing upon the question of the car's value, and as hearsay.

The testimony appears to have been adduced for the purpose of showing part of the entire facts and circumstances and not for the purpose of showing value; for the record shows, again as a part of all the facts and circumstances, the value of the car in the vicinity of Malad equal to the amount owing under the contract, $2,296.80, on September 3, 1953, at which time appellant exercised rights of ownership over the car although the contract was not then in default.

Such testimony does not rest in hearsay for it appears that an agent of appellant discussed the offer at Malad with the person who made it; also that such agent then telephoned the offer from respondent's Malad Office to appellant's Salt Lake City office, and that appellant rejected the offer, stating that it could get more money for the car in Salt Lake City. Such conversations were had in the presence and the hearing of respondent Whitworth.

■ Appellant, by its third assignment of error contends that the verdict and judgment are contrary to the evidence. In support thereof appellant points particularly to the instrument of guaranty which respondent executed, asserting that thereby respondent guaranteed payment to appellant of the unpaid balance of the contract, under the provisions of the contract which read:

"If the Customer defaults on any obligation under this contract, or if the holder shall consider the indebtedness or the car insecure, the full balance shall without notice become due forthwith * * * and holder may * * take possession of it * * *. The car may be sold with or without notice at private or public sale * * * the proceeds less all expenses shall be credited on the amounts payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this contract and shall receive any surplus."

534

Respondent by the terms of the guaranty, guaranteed to appellant, holder of the contract, "the payment * * * *if customer defaults* in payment of any installment at its due date or in any other manner * * *" (emphasis supplied). The guaranty became operative only in the event of the customer's default and not otherwise.

Rasmussen, the customer, had defaulted in making payment of the July and August, 1953, contract installments of $60 each. The "full balance" owing under the contract had become due and appellant had taken possession of the car. Appellant then chose not to follow the procedure, upon default, set out in the contract, but accepted the customer's defaulted payments, which respondent made on behalf of the customer by virtue of said guaranty. The contract then as of September 3, 1953, no longer was in default, nor particularly by reason of any default on the customer's part. Appellant may have pursued its subsequent courses of action, as hereinbefore referred to, because it "considered the indebtedness or the car insecure," to which the *contract of guaranty did not extend;* but appellant could not have pursued such course of action because of a then existent default of the customer, covered by the guaranty, because no such default existed.

■ A further reason appears why respondent cannot be held for payment of the alleged deficiency under said contract. Respondent did not consent to the sale, for $1,000, of the automobile originally securing payment of the contract; nor consent to its sale except for a sum in excess of $1,695 as appellant, in rejecting an offer for such sum, represented it could obtain in Salt Lake City, to be applied toward extinguishment of the debt; nor can respondent's consent to the sale of the automobile under such circumstances be presumed, for respondent did not stand by and permit the security to be impaired or released without objection, since appellant proceeded with the sale of the car for $1,000 both without notifying respondent, thereby to afford him an opportunity to object, and in violation of the previous understanding between the parties that the car be sold for an amount in excess of $1,695.

In Mechanics & Metals Nat. Bank v. Pingree, 40 Idaho 118, 232 P. 5, 10, the rule is stated:

"It is a fundamental principle of the law of guaranty that, with respect to additional security for the payment of a debt, the creditor stands in the position of a trustee for the guarantor, and, if a creditor surrenders or impairs collateral security without the consent of the guarantor, the latter is released to the extent of such negligent loss, impairment, or surrender."

The evidence is in dispute as to the value of the automobile as of September 3, 1953, when appellant exercised its right of possession over it; but the evidence is substan-

tial which shows that the value of the automobile as it was equipped was worth, in the vicinity of Malad, the unpaid balance of its purchase price, $2,296.80. Appellant's action in disposing of the automobile under the circumstances aforesaid discharged respondent as guarantor of the contract. Mechanics & Metals Nat. Bank v. Pingree, supra. Appellant's third assignment of error is not well taken.

Judgment is affirmed. Costs to respondent.

TAYLOR, C. J., KEETON and ANDERSON, JJ., and BAKER, District Judge, concur.