663 P.2d 653

**VALLEY BANK, Plaintiff-Respondent,**

v.

**Louis LARSON, Defendant-Appellant.**

No. 14103.

Supreme Court of Idaho.

April 1, 1983.

Rehearing Denied June 9, 1983.

Ronald S. George, Pocatello, for defendant-appellant.

Brent O. Roche, Pocatello, for plaintiff-respondent.

BAKES, Justice.

Dale Larson, who is not a party to this action, executed the three promissory notes involved in this action in favor of Valley Bank, the plaintiff respondent. First, on or about May 5, 1977, Mr. and Mrs. Dale Larson executed a thirty year promissory note in the principal sum of $66,000 plus interest to respondent, granting respondent a first deed of trust to their family residence as security. Second, on May 30, 1978, Mr. and Mrs. Dale Larson executed a 180-day promissory note in the principal sum of $30,000, with interest thereon and granted as security for this debt a second deed of trust to

their home. As additional security for this note, respondent demanded and received the personal and unconditional guaranty of Louis Larson, the defendant appellant, through a guaranty agreement executed on May 30, 1978. Third, on November 9, 1978, Dale Larson executed a promissory note to respondent in the principal amount of $17,-652.04, providing security in the form of various contract rights and chattel papers generated in connection with his business.

Dale Larson was unable to make the required monthly payments on the promissory notes secured by the first and second deeds of trust. Having once extended the due date of the $30,000 note, respondent Valley Bank, with appellant's written permission, renewed the second promissory note on January 15, 1979, in the principal sum of $30,-000 plus 12% interest per annum.

When Mr. and Mrs. Dale Larson remained unable to make their payments, respondent commenced foreclosure proceedings on the first and second deeds of trust. The foreclosure sale was held September 14, 1979, at which time respondent bank purchased the Dale Larson residence for $71,-188.54. Although respondent subsequently sold the property for $73,400, the proceeds of the trustee's sale were insufficient to extinguish the obligations owed by Dale Larson to the respondent, thus creating a deficiency alleged by respondent to be the sum of $33,258.53, together with interest, attorney fees and costs. Plaintiff respondent did not file an action against Dale Larson for a deficiency judgment within three months of the foreclosure sale as required by I.C. § 45–1512. In a letter dated January 14, 1980, respondent demanded payment from appellant on the $30,000 note, together with all accrued interest. On March 5, 1980, respondent filed this deficiency action against appellant, as guarantor of the obligations owed by Dale Larson to respondent.

In a series of summary judgments, the trial court rejected all of appellant's defenses and, on March 12, 1981, determined that no issues of material fact existed in regard to damages. The trial court entered sum-

mary judgment in favor of the plaintiff respondent in the principal amount of $30,-000, together with interest in the amount of $3,947.31, and costs.

On appeal, appellant urges that the trial court erred in entering three separate summary or partial summary judgments in favor of the respondent, Valley Bank. The first summary judgment entered by the trial court relates to the applicability of Idaho's anti-deficiency judgment statute, I.C. § 45–1512, to Valley Bank's claim for deficiency against the appellant. In part relevant to this issue, I.C. § 45–1512 provides:

"45–1512. MONEY JUDGMENT—ACTION SEEKING BALANCE DUE ON OBLIGATION.—At any time within 3 months after any sale under a deed of trust, as hereinbefore provided, a money judgment may be sought for the balance due upon the obligation for which such deed of trust was given as security. . . ."

It is undisputed that respondent Valley Bank allowed the three month period prescribed in I.C. § 45–1512 to elapse and is barred from filing a deficiency judgment action against Dale Larson, the principal debtor. Appellant argues that as guarantor of the debt, he is entitled to the protections afforded to the principal debtor by I.C. § 45–1512, and that since Valley Bank failed to institute a deficiency action against Dale Larson within three months of the date of foreclosure, Valley Bank is now prohibited from bringing a deficiency action against him.

■ The parties below both alleged that no questions of material fact existed in relation to this issue and moved for summary judgment. The trial court, in its Memorandum and Order dated May 28, 1980, concluded that "[t]he Trust Deed Statutes protect the principal debtor, but the guarantor may not claim the protection because his obligation is independent of the principal debtor's." The trial court's conclusion is well supported by the case law of other jurisdictions. See, e.g., Bank of America Natl. Trust & Savings Ass'n v. Hunter, 8 Cal.2d 592, 67 P.2d 99 (Cal.1937) (statutory three month limitation for initiation of defi-

ciency actions did not bar action against guarantor based on independent obligation); Thomas v. Valley Bank of Nevada, 629 P.2d 1205 (Nev.1981) (anti-deficiency statutes do not apply to obligations of guarantors); Manufacturers & Traders v. Eighth Judicial Dist., 94 Nev. 551, 583 P.2d 444 (Nev.1978) (guarantors not protected by anti-deficiency judgment statutes); First Natl. Bank of Nevada v. Barengo, 91 Nev. 396, 536 P.2d 487 (Nev.1975); see also, Hatch v. Security First Natl. Bank of Los Angeles, 120 P.2d 869 (Cal.1942); Bank of Nevada v. Friedman, 82 Nev. 417, 420 P.2d 1 (Nev.1966); but see Apache Lanes, Inc. v. Natl. Educators Life Ins. Co., 529 P.2d 984 (Okl.1974). See generally, Annot., 49 A.L. R.3d 557 (1973). However, even if the protections afforded to a principal debtor by I.C. § 45–1512 inure to the benefit of the guarantor of the debts, which we do not here decide, the trial court also determined that the defendant appellant expressly waived any right he may have possessed to "require the creditor to proceed in any specific manner on default of the principal debtor." We agree.

■ A guarantor may legally contract to waive a defense provided by anti-deficiency judgment statute. See Riverside Natl. Bank v. Manolakis, 613 P.2d 438, 441 (Okl. 1980). In Riverside, the Supreme Court of Oklahoma determined that the guarantor had waived "certain statutory defenses," including the defense that the creditor had not filed a deficiency judgment motion against the principal debtor within ninety days of the foreclosure sale, found in Okla. Stat. Tit. 12, § 686 (1971). Id. at 442. This defense had previously been extended to guarantors in Apache Lanes, Inc. v. Natl. Educators Life Ins. Co., 529 P.2d 984 (Okl. 1974) (debt deemed satisfied when deficiency recovery not timely sought). Nevertheless, in Riverside the Oklahoma Supreme Court rejected the notion "that the benefits of a Section 686 discharge automatically avail to a guarantor," 613 P.2d at 440, and restricted its holding in Apache Lanes. Id. The Oklahoma court stated essentially that the extent of a guarantor's liability is deter-

mined by the precise terms of the guaranty contract. The court directed its attention to the guaranty involved and determined that the guarantor had expressly waived his statutory defense. 613 P.2d at 442;[1] *see also Mariners Savings & Loan Ass'n v. Neil,* 22 Cal.App.3d 232, 99 Cal.Rptr. 238 (1971) (court held that where a contract of guaranty contained explicit waivers of defenses based on anti-deficiency judgment statutes, among other waivers, defendant guarantor was not entitled to invoke protective shield of deficiency judgment statutes); *Union Bank v. Gradsky,* 265 Cal.App.2d 40, 71 Cal.Rptr. 64 (1968) (guarantor could by express contract either waive or be estopped from raising defense to creditor's action to recover a deficiency).

Similarly, this Court recently held that a guarantor "had contractually waived his defense of release of the principal debtor." *McGill v. Idaho Bank & Trust Co.,* 102 Idaho 494, 499, 632 P.2d 683, 688 (1981). In *McGill,* the creditor released the principal debtor from liability without the consent or knowledge of the guarantor's successor in interest. This release would normally have discharged the guarantor. *See, e.g., Knight v. Cheek,* 369 A.2d 601, 603 (D.C.App.1977). The question presented in *McGill,* however, was whether the guaranty provision in the assignment of a conditional sales security agreement effectively waived the guarantor's defense of release.[2] This Court determined that the language of guaranty was "all embracing" and effectively provided for waiver, even in the absence of a provision that explicitly authorized the release of the principal debtor without the knowledge

and consent of the guarantor. 102 Idaho at 499, 632 P.2d at 688. Focusing our attention on the explicit language contained in the guaranty agreement executed by the appellant in this action, we find that the guaranty specifically provides:

"We hereby agree you may enforce this guaranty independent of any action against debtor or foreclosure of security given by debtor and we expressly waive any right to require you to (a) proceed against debtor, (b) proceed against, foreclose, or exhaust any security of debtor, or (c) pursue any other remedy in your power whatsoever. Until you are fully paid by debtor we shall have no right of subrogation nor right to share in the security of debtor. We further agree that you may, without notice to us, pledge, sell or assign any and all indebtedness covered by this guaranty, and that this guaranty shall continue in effect for the benefit of the purchaser or holder of the indebtedness so guaranteed."

The above language of waiver is clear and unambiguous, and we follow the rule that "where the language in the guaranty agreement is unequivocal, the agreement must be interpreted as a matter of law according to the language employed therein." *McGill v. Idaho Bank & Trust Co.,* 102 Idaho at 498, 632 P.2d at 687; *see Industrial Investment Corp. v. Rocca,* 100 Idaho 228, 596 P.2d 100 (1979); *Commercial Credit Corp. v. Chisholm Bros. Farm Equip. Co.,* 96 Idaho 194, 525 P.2d 976 (1974). Appellant expressly waived any right to require respondent to proceed against Dale Larson, the principal

---

1. The guaranty in *Riverside* contained language that the guarantor's liability "would not be 'affected or impaired' by any 'failure, neglect or omission' of the bank to protect, in any manner, the collection of the indebtedness or the security given therefor." 613 P.2d at 442.

2. The language of guaranty in the assignment in *McGill* provided that the guarantor:
   " '[H]ereby guarantees due and punctual payment of all sums due or to become due thereunder . . . .'
   " 'The undersigned hereby waives (a) the right, if any, to the benefit of, or to direct the application of any security hypothecated to the Bank, until all indebtedness of the Buyer

to the Bank, howsoever arising, shall have been paid; (b) the right to require the Bank to proceed against the Buyer, or to pursue any other remedy in the Bank's power, and agrees that the Bank may proceed against any of the undersigned directly and independently of the Buyer, and that the cessation of the liability of the Buyer, for any reason other than full payment, or the acceptance, release or substitution of security, or any impairment or suspension of the Bank's remedies or rights against the Buyer, shall not in anywise affect the liability of any of the undersigned hereunder.' "

obligor, or to pursue any other available remedy. Even construed in favor of the guarantor, *see J.R. Watkins v. Clark,* 65 Idaho 504, 511, 147 P.2d 348, 351 (1944), this language is broad enough to include waiver of a defense that respondent failed to seek recovery for the deficiency from Dale Larson within the three month time period prescribed by I.C. § 45–1512. A contrary interpretation would lead to the illogical conclusion that even though respondent was not required to proceed against Dale Larson as a prerequisite to an action against the appellant, respondent was nevertheless required to file an action against Dale Larson within three months of the date of foreclosure sale to preserve the appellant guarantor's liability on any deficiency. Therefore, we hold that appellant expressly waived any defense that he was protected from a deficiency action under I.C. § 45–1512, which he may otherwise have been entitled to assert.

Next, appellant alleges that respondent misapplied funds paid to respondent by Dale Larson, thereby releasing appellant from liability on his guaranty. In an affidavit filed in opposition to respondent's motion for summary judgment on appellant's remaining defenses, Dale Larson alleged, in part:

"The Thirty Thousand Dollars and No Cents ($30,000.00) note upon which LOUIS LARSON was sued by VALLEY BANK was money borrowed to do a job in Rawlins, Wyoming, for a federal project. The name of the job was Highland Hills Project. VALLEY BANK would not loan the money without a guarantee from LOUIS LARSON and, at the time the note was signed and the guarantee was obtained, it was agreed that the money would be used for the Highland Hills Project and that all proceeds from the Highland Hills Project would be applied to pay off this note. For this purpose, VALLEY BANK took an assignment on the proceeds from the Highland Hills Project. There were, in fact, more than enough proceeds owing

from the Highland Hills Project to pay off the Thirty Thousand Dollars and No Cents ($30,000.00) note but VALLEY BANK wrongfully applied those proceeds to other notes, leaving the Thirty Thousand Dollars and No Cents ($30,000.00) note unpaid."

Paul Edwards, a co-worker of Dale Larson's, filed a similar affidavit. Additionally, appellant's attorney attached to his affidavit in opposition to the motion for summary judgment copies of check stubs from the Highland Hills Project showing that Federal Projects Construction, Inc., paid the total sum of $32,000.00, but they do not show to whom it was paid.

The affidavits of Larson and Edwards do not allege that the agreement was reduced to writing, nor does the record contain a written agreement embodying the terms of the alleged agreement. Furthermore, the record does not contain any evidence that Valley Bank ever actually received any of the proceeds from the Highland Hills Project. The affidavit of Joe Campbell, the vice-president/manager of Valley Bank, the Pocatello, Idaho, branch, stated that he had reviewed the check stubs attached to the attorney's affidavit and that:

"[Y]our affiant is unable to determine that those amounts were in fact paid to Valley Bank and has in fact reviewed Valley Bank's records and cannot find specific allocation of those amounts and cannot find any specific correlation between the amounts indicated in those checks and payments on any accounts of Dale Larson at Valley Bank."

Nevertheless, the appellant asserts that the allegations contained in the affidavits give rise to material issues of fact, precluding the trial court's entry of summary judgment on this issue.

■ The trial court "[a]ssum[ed] for the moment there was an agreement to the effect that the funds from the Highland Hills Project would be applied to the note secured by Louis Larson's guaranty," [3] but

---

**3.** The allegation of a separate (apparently oral) agreement presents legal problems as well as

lack of factual support. The affidavits do not assert that the alleged agreement was written,

found that "there is no indication whatsoever that such agreement survived renewal of the note and guaranty." We agree.

The record contains a series of letters relevant to this question. When the original note became due and Dale Larson was unable to pay it, he entered into negotiations with Valley Bank to renew the note. Valley Bank conditioned the renewal of the $30,000.00 note on the express approval of "Louis W. Larson, the Guarantor," in a letter to Dale Larson dated December 21, 1978. This letter also stated that "[a] copy of this letter will be sent to your Father in order that he understands his liability in this matter." Valley Bank sent a letter bearing the same date to Louis Larson, in which Valley Bank indicated its willingness to renew the $30,000.00 note "if he [Dale] can pay the interest to date and gain your approval as the Guarantor." This letter further stated: "Please contact me by mail letting me [the then vice-president] know if you are willing to go along with Dale on the renewal." The next letter contained in the record is dated January 4, 1979, is addressed to Valley Bank and is signed by Louis W. Larson. The letter states: "Having read your letter and talked to Dale, I am willing to go along with your decisions. It is to be hoped that you will give him what time he needs to get the money. Thank you."

There is no mention of the purported agreement that Valley Bank was to apply certain proceeds to the $30,000.00 note in the correspondence between Valley Bank and Louis Larson immediately prior to the renewal of the $30,000.00 note. No other evidence was presented that the purported

agreement survived the renewal of the $30,-000.00 note, or that Valley Bank ever actually received any proceeds from the Highland Hills Project. In the absence of such evidence, the record does not establish a triable issue of fact on the question of whether the respondent was released from his obligations under the guaranty contract. We therefore affirm the trial court's entry of summary judgment on this issue.

Finally, appellant alleges that the trial court erred in ruling as a matter of law that the guaranty agreement extended to the $17,652.04 note executed by Dale Larson in favor of Valley Bank on November 9, 1978. This question arises in relation to the trial court's determination of the amount of deficiency that respondent Valley Bank is entitled to recover from the appellant, as guarantor of Dale Larson's obligations. In its Memorandum and Order dated March 12, 1981, the trial court determined that Dale Larson's total indebtedness to Valley Bank existing at foreclosure amounted to $120,646.71, inclusive of the principal and interest due on the $17,652.04 note. For the reasons discussed below, however, we reach no conclusion as to whether the guaranty extended to the $17,652.04 promissory note.

The guaranty contained the following limitation on the extent of appellant's liability. "PROVIDED, however, we shall not be called upon by virtue of this Guaranty to pay more than $30,000.00 in the aggregate, together with all accrued interest." Acknowledging that limitation, the trial court limited its award to $30,000 plus interest to March 10, 1981, for a total award of $33,-947.31.

nor does the record contain any evidence that establishes the existence of such an agreement. The original $30,000.00 promissory note, the renewal $30,000.00 note, and the guaranty are integrated and unambiguous agreements. Parol evidence of prior or contemporaneous oral agreements is inadmissible to alter, contradict or vary the terms of an unambiguous, written agreement. *Green v. K.S. Webster & Sons,* 77 Idaho 281, 291 P.2d 864 (1955); *Paurley v. Harris,* 75 Idaho 112, 268 P.2d 351 (1954). The affidavits presented by appellant contained evidence that would have altered the unconditional terms of the express guaranty agreement and would have been inadmissible under the

parol evidence rule. Affidavits offered in support of or opposition to motions for summary judgment, "shall be made on personal knowledge," and *"shall set forth such facts as would be admissible in evidence . . . ,"* I.R.C.P. 56(e). Affidavits that are not based on such evidence must be disregarded, *see Tapper Chevrolet Co. v. Hansen,* 95 Idaho 436, 439, 510 P.2d 1091, 1094 (1973). Therefore, the respondent's asserted defense, which was based solely upon an alleged agreement to apply the payments from the Highland Hills Project in a certain way, was probably legally insufficient as well as factually unsupported.

■ A brief review of the obligations of Dale Larson to Valley Bank involved in this dispute reveals the following series of transactions. Dale Larson executed a promissory note in the amount of $66,000 to Valley Bank on May 5, 1977. This note was secured by a first deed of trust on Dale Larson's residence. Dale Larson also executed a $30,000 promissory note in favor of Valley Bank on May 29, 1978. As security for this note, Valley Bank demanded and received a second deed of trust on Dale's residence and the personal and unconditional guaranty of the appellant. This note, with appellant's written permission, was once extended and subsequently renewed. The first and second deeds of trust were foreclosed on September 14, 1979. The total amount owed on the first promissory note on the date of foreclosure was $70,160.43. The evidence in the record shows that the proceeds generated at the foreclosure sale, $71,188.54, resulted in satisfaction only of the first deed of trust and the costs incurred at the foreclosure sale. It is uncontroverted that no payments were ever made on the principal or interest due on the renewed $30,000 note, and that the proceeds from the foreclosure sale on the deeds of trust were insufficient to satisfy any part of the indebtedness outstanding on the second promissory note. Thus, the record establishes that the principal obligor's indebtedness at the time the deficiency action was filed amounted to at least the entire principal and interest outstanding on the renewed $30,000 note.

Appellant executed an express guaranty, guaranteeing the indebtedness of Dale Larson to Valley Bank as security for the second or $30,000 promissory note. By way of a partial summary judgment, the trial court discounted appellant's defenses of failure of consideration and acceptance, and appellant raises no issue concerning the validity of the guaranty on appeal. The record contains appellant's written and express promise to guaranty the debt of Dale Larson to Valley Bank, up to the extent of the explicit $30,000 together with accrued interest limitation contained in the guaranty. Since the deficiency remaining after the foreclosure sale exceeded the $30,000 limitation on the appellant's liability, no genuine issue of material fact exists as to the amount respondent is entitled to recover in its deficiency action against the appellant, and we affirm the trial court's award and entry of summary judgment on the issue of damages.

The judgment of the trial court is affirmed. Costs to respondent. Respondent's request for attorney fees on appeal is denied.

DONALDSON, C.J., and WALTERS, J. Pro Tem., concur.

SHEPARD, Justice, dissenting.

Although the majority opinion has accurately recited the facts, it has, I suggest, ignored the standard which at summary judgment requires that those facts and all inferences legitimately flowing therefrom be construed in a light most favorable to the party against whom summary judgment is sought, *i.e.*, the guarantor. So construed, in my opinion, the facts and the legitimate inferences arising therefrom make summary judgment inappropriate here. I also disagree with the determination of the majority that the guarantor herein received from the creditor Valley Bank all of the protections for which the guarantor bargained under the contract. Hence, I dissent.

The court is again required to articulate the rights of a guarantor of a debt, where the creditor is a financial institution which has impaired the security relied upon by the guarantor and thus infringed the rights of the guarantor. At the outset, it must be noted that the appellant was a gratuitous guarantor rather than a commercial surety. He received no consideration from either the bank or his son, the principal debtor, for his guarantee of the son's promissory note. Although such status does not relieve him of his contract, nevertheless, as a gratuitous guarantor, he is "a favorite of the law and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent." *Industrial Investment Corp. v. Rocca*, 100 Idaho

228, 233, 596 P.2d 100, 105 (1979). *See also McGill v. Idaho Bank & Trust Co.,* 102 Idaho 494, 503, 632 P.2d 683, 692 (1981) (Shepard, J., dissenting).

It must also be noted that the contract of guaranty here was a contract of adhesion and is to be construed against the respondent bank, who was responsible for its drafting and contents. *McGill v. Idaho Bank & Trust Co., supra; Industrial Investment Corp. v. Rocca, supra; J.R. Watkins Co. v. Clark,* 65 Idaho 504, 147 P.2d 348 (1944).

The guaranty contract here contains language to the effect that the bank need not foreclose against the principal debtor before looking to the guarantor for payment. I cannot conceive, however, that by such language the parties intended that the creditor should be able to purposefully render the security worthless or unavailable and then look to the guarantor. While I agree that the contract provision allows the creditor to choose between the debtor and the guarantor as to which the creditor might first proceed against, it is, I think, absurd to construe that language as does the majority to the end that the bank might totally excuse the debtor from any obligation as to a deficiency, but then proceed against the guarantor. The contract also provides: "Until you [bank creditor] are fully paid by debtor we [guarantor] shall have no right of subrogation nor right to share in the security of debtor." Under that literal language, the guarantor could not personally bring the deficiency action if the bank, as it did, failed to timely do so. Thus, the guarantor is at the complete mercy of the creditor in not being subrogated and has absolutely no recourse against the debtor. The guarantor could not sue the principal debtor prior to the bank's being "fully paid by debtor" and now, of course, if the guarantor were to bring action against the principal debtor, he would be met by the defense that the time to bring such an action as set forth by I.C. § 45–1512 had expired.

I suggest that the result is in direct contradiction to the established law. As stated in 38 Am.Jur.2d, Guaranty, § 126 (1968):

"[A]ny rights of the guarantor as against the creditor are determined in the first instance, by the terms of the guaranty contract. Beyond these rights, however, the law imposes on the creditor an obligation not to deal with the debtor, or any security for the debt, *in such a manner as to harm the interest of the guarantor.*" (Emphasis supplied.)

*See also* 38 Am.Jur.2d, Guaranty, § 87 (1968).

As was well stated in *Universal C.I.T. Credit Corp. v. Whitworth,* 77 Idaho 528, 534, 296 P.2d 712, 716 (1956):

"It is a fundamental principle of the law of guaranty that, with respect to additional security for the payment of a debt, the creditor stands in the position of a trustee for the guarantor, and, if a creditor surrenders or impairs collateral security without the consent of the guarantor, the latter is released to the extent of such negligent loss, impairment, or surrender." *Quoting Mechanics & Metals Nat. Bank v. Pingree,* 40 Idaho 118, 232 P. 5 (1924).

*See also First Piedmont Bank and Trust Co. v. Doyle,* 97 Idaho 700, 551 P.2d 1336 (1976); *Industrial Investment Corp. v. Rocca, supra.*

If it is assumed that the majority's interpretation of the contract is correct, then I would hold that the guaranty agreement is unconscionable and against public policy. Particularly do I believe this is true in light of the bargaining relationship of the parties here. The creditor is a financial merchant dealing in loan agreements on a regular basis and charged with superior knowledge of suretyship, foreclosure, and contracts in general. The guarantor, in contrast, has no such expertise, but at the request of the bank placed his signature upon a document drafted by the bank, a contract of adhesion. By law the guarantor could reasonably expect that the bank would protect the interests of the guarantor and at least not inhibit or destroy his rights. If the bank failed in its duty, the guarantor could reasonably expect that the courts would extend relief. Contrary to his reasonable expectations, he is not only denied the protection of the law, but has not received so much as his day in court.

I must also dissent from the majority's holding that no genuine issue of material fact existed to preclude summary judgment. Appellant alleged that at the time the guaranty was elicited, a contemporaneous agreement was reached that the principal debtor would apply the loan proceeds to the construction of what was known as the Highland Hills project, that the proceeds from that Highland Hills project were assigned to the bank, that the bank received those proceeds, which were more than adequate to pay off the guaranteed loan, but that the bank wrongfully applied those proceeds to other accounts.

In my opinion, those allegations supported by affidavit raise specific issues and, in the absence of equally specific denials by affidavit on the part of the bank, stand either admitted or, at the very least, on a motion for summary judgment, are to be construed, together with all of their inferences, in favor of the appellant guarantor. The bank *did not* specifically deny appellant's allegations. Rather, it only stated that it was "unable to determine" if those amounts were paid to the bank and it could not "find specific allocation of those amounts." Such, I would hold, does not specifically controvert appellant's position as set forth in his affidavit. But, even if it be assumed that such produced a controverted issue of fact, it was required to be tried.

The majority opinion makes much of the fact that the agreement had not been alleged to be reduced to writing. Certainly, the affidavit of appellant alleges that the bank took an assignment and, at the very least, the inference contained therein is that the assignment was in writing. The majority further argues that such defense was "factually unsupported" in that the "evidence" does not indicate that such an agreement survived renewal of the note and guaranty. There is a total lack of any evidence that the agreement of assignment and applications of funds did *not* survive the renewal of the note and guaranty. Again, taking the evidence and inferences arising therefrom in the light most favorable to the appellant, I believe the majority

errs in affirming the summary judgment issued in the face of what was an obvious triable issue of fact and one which was material and perhaps controlling as to the ultimate issue of the liability of the guarantor.

BISTLINE, Justice, dissenting.

I join in that which Justice Shepard has written adding thereto my own views.

If I correctly read the majority opinion, it is to be deduced therefrom, as the majority applies the waiver provision of Louis Larson's guaranty, that there was actually no legal obligation upon the part of Valley Bank to obtain Louis Larson's written permission to renew the second note involved at an interest rate of 12 percent (see paragraph of majority opinion) and the Bank was merely being courteous. This is consistent with *McGill v. Idaho Bank & Trust Co.,* 102 Idaho 494, 632 P.2d 683 (1981), which precedent the majority is obviously satisfied with and follows today. Unable to concur in *McGill,* which I thought then and continue to believe is an aberration, I am unable to concur in today's sequel to *McGill.*

Much of that written by Justice Shepard in *McGill* is applicable here. There the majority approved the unauthorized substitution of a new debtor, a person the guarantor had never heard of, and approved holding the guarantor liable on the terms of a guaranty much like the one here.

If, as the bank impliedly concedes, it was required to obtain Louis Larson's permission to extend and/or alter the underlying obligation, it was equally required to pursue its right to a deficiency against its debtor, Dale Larson, who was not even made a party to this action.

Here the guarantor, and so designated on the document which he signed, is held liable to the same extent as though he had been an original borrower on the notes in question. He was not such. He was a guarantor, and as such was entitled to rely on long-established and well-known principles attendant to the law of guaranty and suretyship.

A well-known principle of guaranty or suretyship is the right of subrogation in a guarantor to recover from his principal if the guarantor is required to satisfy the guarantied obligation. The guarantor is entitled to succeed to the creditor's position. *Mack Financial Corp. v. Scott,* 100 Idaho 889, 606 P.2d 993 (1980).

In *Smith v. Steele Motor Co.,* 53 Idaho 238, 243, 22 P.2d 1070, 1071 (1933), this Court set forth the rule that:

"'A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, [are] in any way impaired or suspended.'" (Quoting from California Civil Code, sec. 2819.)

The rule was applied just a few short years ago by this Court in *Mack Financial Credit Corp. v. Scott, supra:*

"'"Whatever * * * amounts to a good defense to the original liability of the principal, is a good defense for the sureties when sued * * *.

"'"Otherwise, the principal would be indirectly deprived of the benefit of a valid defense against the creditor, by being compelled, in effect, to respond through his sureties; *or the sureties would be deprived of their right to reimbursement from the principal,* and thus one or the other be compelled to lose the rights which the law had secured to them."' *Mutual Finance Co. v. Politzer,* 21 Ohio St.2d 177, 256 N.E.2d 606, 610–11 (1970)." *Mack Financial Corp. v. Scott,* 100 Idaho at 895, 606 P.2d at 999 (1980) (emphasis added).

Here the creditor either carelessly, or callously, or carelessly and callously, allowed the right to a deficiency judgment to evaporate, and yet would hold Louis Larson liable as though he were a principal obligor, and not a mere guarantor with the rights of a guarantor, including subrogation. It is said that the waiver contained in the agreement of guarantor allows this unjust result. Yet the guaranty contains language which recognizes that a guarantor is possessed of subrogation rights. "Until you are fully paid by debtor *we shall have no right of subrogation* nor right to share in the security of the debtor." (Emphasis added.)

If the majority is correct in its view that the guarantor can be sued independently of any action being taken against the actual debtor, the law of guaranty is virtually destroyed. In the commercial world guaranties have forever served as necessary, in fact vital, functions. But, the waiver in this case, and in *McGill,* can only serve to destroy the further use of guaranties. What is left after the majority's smoke clears away is not suretyship or guaranty, but co-obligation disguised as suretyship. Only the legislature may now step in to prevent the most obvious examples of overreaching which have surfaced and are now sanctioned by this Court. Surely there is an obligation to warn the signer in unmistakable language that a guarantor beguiled with this type of waiver language is not a guarantor, as was formerly forever so under the law of guaranty as it existed for many years.

For my part, I would not, as a matter of public policy, apply the waiver to the extent which the majority today does. Certainly, there has always been and should be a requirement that a creditor cannot do, or omit doing, that which is irreconcilable with the interests of an unsuspecting and unwarned guarantor.