730 P.2d 1078

**FIRST SECURITY BANK OF IDAHO, N.A., Plaintiff-Respondent,**

**v.**

**MOUNTAIN VIEW EQUIPMENT COMPANY, INC., an Idaho corporation; Carl V. Nicholson and Patricia A. Nicholson, husband and wife; and Thomas T. Nicholson and Diane Nicholson, husband and wife, Defendants-Appellants,**

**and**

**Twin V. Ranches, Inc., an Idaho corporation, Defendant.**

**No. 16452.**

Court of Appeals of Idaho.

Dec. 30, 1986.

Petition for Review Granted
Feb. 25, 1987.

Kenneth O. Kreis, Boise, for defendants-appellants.

Michael L. Schindele, Boise, for plaintiff-respondent.

BURNETT, Judge.

This is a suit by a bank to collect the unpaid balance of a contract assigned to it by a farm implement dealer. The question presented is whether the bank is barred from collecting because it failed to preserve certain collateral. The district court held that it was not. We agree.

The facts essential to our opinion are undisputed. An organization known as Twin V. Ranches, Inc., purchased farm equipment from a dealer, Mountain View Equipment Co., Inc. The dealer extended credit to the buyer, and retained a security interest in the equipment, pursuant to an installment sales contract. The contract provided for annual payments of principal and interest. The dealer then assigned its interest in the contract to First Security Bank. Under the terms of a dealer financing agreement, any such assignment was made with full recourse, meaning that the dealer guaranteed the buyer's performance and agreed to pay the full balance of the contract, including interest, if the buyer's payments became delinquent. A secondary guaranty was added when individual owners of the dealership—Carl V. Nicholson, Thomas T. Nicholson and their spouses—personally assumed responsibility for any sums owed to the bank.

The buyer took possession of the equipment but later became financially distressed. At the request of another creditor, arrangements were made to auction the buyer's property. Although the buyer was not then in default on the assigned contract, the bank agreed that equipment covered by the contract might be offered for sale at the auction. The dealer was so notified. As it turned out, only one item of contract equipment was sold. The proceeds were transmitted to the bank and were applied to the contract, resulting in prepayment of an installment coming due six months hence. Approximately eighteen months after the auction, the buyer missed the next annual installment when it came due. The bank demanded payment from the dealer, invoking the guaranty contained in the dealer financing agreement. The bank also invoked the personal guaranties and demanded payment from the individual guarantors. When the dealer and the individuals refused to pay, the bank sued.

At trial, all defendants raised impairment of collateral as a defense. They adduced evidence that equipment not sold at auction later had become damaged. They contend-

ed that the bank negligently failed to preserve the collateral. The district judge found that the bank had not caused the impairment of value by its own acts and, in any event, that the guaranties signed by the dealer and the individuals contained waivers against such a defense. Judgment was entered for the bank. This appeal followed.[1]

▪ The threshold issue is whether the bank breached a duty to these defendants by failing to protect the collateral from impairment after the auction. Generally, a secured creditor has an obligation to avoid harming the interests of a guarantor. *Industrial Investment Corp. v. Rocca,* 100 Idaho 228, 596 P.2d 100 (1979); I.C. §§ 28–3–606(1)(b) and 28–9–207. However, even if this obligation were extended broadly to include preventing harm caused by others, the question would remain whether the dealer and the individuals waived their right to assert such a duty in this case.

Our Supreme Court has held that a guaranty agreement unequivocally waiving certain rights must be interpreted and enforced according to its literal terms. *See Valley Bank v. Larson,* 104 Idaho 772, 663 P.2d 653 (1983); *McGill v. Idaho Bank & Trust Co.,* 102 Idaho 494, 632 P.2d 683 (1981). In *Valley Bank,* a creditor failed to file an action against a debtor for a deficiency judgment within a three-month limitation period. The creditor then sued the guarantor, who raised the limitation period as a defense. The Supreme Court held that the language of the guaranty agreement, in which the guarantor "expressly waive[d] any right to require [the creditor] to ... proceed against debtor," constituted a binding waiver of the limitation defense. 104 Idaho at 774–75, 663 P.2d at 655–56. In *McGill,* the creditor, without consent of the guarantor, released the principal debtor and substituted a new debtor. The substitute debtor defaulted and the creditor proceeded against the

guarantor. The court held that although release of a principal debtor usually discharges a guarantor, the unequivocal language of the guaranty agreement at issue effectively waived the defense of release. After *McGill* was decided, our Court similarly recognized a waiver in a guaranty agreement. In *Bank of Idaho v. Colley,* 103 Idaho 320, 647 P.2d 776 (Ct.App.1982), we held that a guarantor was bound by provisions allowing the creditor to extend the debt and to sue without seizing certain personal property.

The dealer financing agreement in this case provided that the dealer would be indebted to the bank for the amount owed on the equipment sales contract

> ... *whether or not the bank* notified [the dealer] of defaults occurring under [the agreement], or *repossesses, realizes upon, applies, protects, or preserves the property subject thereto,* and whether or not the bank commences, prosecutes or defends any suit or action against the maker of such contracts and/or title notes or otherwise, takes any legal or other act on or proceedings, or otherwise exercises diligence, for the collection, enforcement or protection of such notes and contracts, or otherwise, with respect thereto. [Emphasis added.]

This provision was binding not only upon the dealer but also upon the individual defendants through their personal guaranties. These secondary guaranties further recited that

> [t]he bank may from time to time extend the time of payment, renew or modify any of the obligations of the debtors to the bank, release a guarantor or guarantors, and *deal in any and all respects whatsoever with any or all of the collateral securing said obligations* or securing any of them, *release, and grant or suffer any indulgence* with respect to any endorser, guarantor, or surety, or

---

1. The appeal was taken from a judgment entered against the dealer and the individual guarantors. The record contains no judgment

against the buyer, perhaps because the bank decided that such a judgment would be worthless.

*with respect to any collateral,* including, but not limited to, the surrender, compromise, release, renewal, extension of time of payment, exchange, withdrawal, or substitution of any item or items of collateral, without prior notice to or consent of the guarantors. [Emphasis added.]

The district judge held that these instruments unambiguously waived any right to raise impairment of collateral as a defense.

█ Whether an instrument is ambiguous is a question of law over which we exercise *de novo* review. *Laight v. Idaho First National Bank,* 108 Idaho 211, 697 P.2d 1225 (Ct.App.1985). Similarly, the interpretation of an unambiguous instrument is a question of law. *Luzar v. Western Surety Co.,* 107 Idaho 693, 692 P.2d 337 (1984). These principles apply to guaranties. *Johnson Equipment v. Nielson,* 108 Idaho 867, 702 P.2d 905 (Ct.App.1985). Here, we agree with the district judge's ruling on the effect of the dealer financing agreement and secondary personal guaranties. The pertinent language is clear. The defendants are indebted "whether or not the [bank] preserves the property...." The defendants have waived their right to assert a defense based upon impairment of the collateral.[2]

█ The defendants openly invite us to chart a course different from that prescribed by *McGill* and *Valley Bank.* They assert that these cases have undermined the "good faith" requirement of I.C. § 28–1–102(3). They argue that by allowing a creditor to put an "all embracing" waiver clause in a guaranty agreement, *McGill* and *Valley Bank* render the guarantor liable even if the creditor engages in outrageous misconduct with respect to the collateral. We concede that the impact of the decisions is sweeping. But we are not prepared to disregard two recent rulings of our Supreme Court. Moreover, we are not

convinced that creditors in all instances will have carte blanche to abuse guarantors. Judicial relief may be sought from unconscionable contracts. *See generally Hershey v. Simpson,* 111 Idaho 491, 725 P.2d 196 (Ct.App.1986). A court may limit the application of any oppressive clause so as to avoid an unconscionable result. I.C. § 28–2–302.

█ The defendants in this case have made no showing of unconscionability. The gist of their defense has been that the bank failed to advise them that only one item of equipment was sold at the auction. As a result, they claimed, an opportunity to protect the value of unsold items was lost. However, the district judge found that the dealer had been notified of the auction. The dealer sent an observer who erroneously reported to the dealer that all equipment had been sold. The bank subsequently sent the dealer statements of account that should have alerted it to the existence of unsold collateral.

The defendants also claim that the bank should have declared the equipment buyer to be in default at the time of the auction, thereby allowing the bank or the dealer to repossess all of the equipment. However, as noted above, payments on the contract were not delinquent at that time. When the bank applied the auction proceeds to the contract, a prepayment resulted. A bank officer testified that this procedure was followed because it gave the buyer additional time to dispose of unsold equipment—a task it might accomplish more advantageously than could the bank. When the buyer later became delinquent, the bank did declare a default and notified the defendants. However, even then, the defendants did not undertake for eight additional months to preserve the collateral. We believe these circumstances afford no occasion to grant the defendants relief

2. Some Uniform Commercial Code safeguards regarding the disposition of repossessed property cannot be waived. *See* I.C. § 28–9–501(3); *CIT Financial Services v. Herb's Indoor RV Cen-* *ter,* 108 Idaho 820, 702 P.2d 858 (Ct.App.1985). However, the defendants have not asserted that such safeguards are at issue here.

from their guaranties upon the ground of unconscionability.

In a related argument, the defendants urge that they should not have been held liable for interest accruing before the bank exercised recourse upon the buyer's delinquency. The argument is unavailing. The dealer financing agreement unequivocally provided that the dealer would be liable for "the full amount of the unpaid balance ... owing [when the bank exercises its right of recourse] ... including principal, interest and any other sums...." The waiver provisions quoted above preclude the defendants from raising the bank's failure to act earlier as a defense. Therefore, the district court correctly awarded the entire unpaid principal and interest due the bank when it invoked its right of recourse.

The bank seeks attorney fees on appeal. We find no provision in the dealer financing agreement that authorizes recovery of attorney fees from the dealer. Ordinarily, the individual guarantors would have no greater liability than the dealer. *Cf. Johnson Equipment, Inc. v. Nielson, supra* (liability of guarantor generally cannot exceed that of principal debtor). However, the personal guaranty agreements independently state that the "guarantors jointly and severally agree to pay a reasonable attorney's fee if this guaranty be placed with an attorney for collection or suit be instituted thereon." In *Industrial Investment Corp. v. Rocca,* 102 Idaho 920, 643 P.2d 1090 (Ct.App.1982), we held that, where a guaranty agreement provides for attorney fees and a creditor successfully defends a judgment against a guarantor on appeal, the creditor is entitled to an award of fees incurred in that appeal. *Rocca* is applicable here. Accordingly, the bank is entitled to recover attorney fees from the individual defendants upon their personal guaranties. The amount of the award shall be determined in accordance with Idaho Appellate Rule 41(d).

The judgment of the district court is affirmed. Costs, including attorney fees, to the respondent, First Security Bank.

WALTERS, C.J., and SWANSTROM, J., concur.